FILED

2012 Jun-15  PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STEEL, PAPER AND FORESTRY, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION AFL-CIO-CLC; and USW LOCAL 200,** | ) ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No. CV-10-S-2830-NW** |
| **vs.** | ) ) ) | |
| **WISE ALLOYS, LLC,** | ) ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs — the United Steel, Paper and Forestry, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO-CLC ("the Union"), and USW Local 200 ("the Local") — commenced this action against Wise Alloys, LLC, asserting a breach of contract claim under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 141 *et seq*.[1] Plaintiffs allege that defendant violated a collective bargaining agreement by refusing to arbitrate a grievance.[2] Plaintiffs ask this court to order defendant to submit the grievance to

---

[1] Doc. no. 1 (Complaint).

[2] *Id.* at 6.

arbitration.[3]  The case presently is before the court on the parties' cross motions for summary judgment.[4]  Upon consideration of the motions, briefs, and evidentiary submissions, the court concludes that plaintiffs' motion is due to be granted and defendant's denied.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[5]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact 'exists only if sufficient evidence is presented favoring

---

[3] *Id.*

[4] Doc. no. 13 (Defendant's Motion for Summary Judgment); doc. no. 16-1 (Plaintiffs' Motion for Summary Judgment).

[5] Rule 56 was amended, effective December 1, 2010, in conjunction with a general revision of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.) (emphasis supplied).  Consequently, cases interpreting the language of Rule 56 prior to the 2010 amendments are equally applicable to the revised version.

the nonmoving party for a jury to return a verdict for that party.'" *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284-85 (11th Cir. 1997)).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921); s*ee also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (stating that the determinative question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law").

When presented with cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Wright, Miller & Kane, *Federal Practice and Procedure:  Civil 3d* § 2720, at 335-36 (1998) (footnote omitted).  As another court within the Eleventh Circuit has observed:

> "Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*; *accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact.  Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.") (citations omitted).

*Ernie Haire Ford, Inc. v. Universal Underwriters Insurance Co.*, 541 F. Supp. 2d 1295, 1297-98 (M.D. Fla. 2008).  *See also American Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005) ("This court reviews the district court's

disposition of cross-motions for summary judgment *de novo*, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party.").

## II.  SUMMARY OF FACTS

Defendant operates an aluminum rolling mill in Muscle Shoals, Alabama.[6]  The Union represents a bargaining unit of production employees at that mill.[7]  The Local consists of those members of the bargaining unit that chose to join the Union.[8]

### A.    The Agreement

The parties entered into a collective bargaining agreement that had an effective date of November 1, 2007, and that is binding through November 1, 2012.[9]  The agreement contains three provisions relevant to the parties' dispute:  a cost-of-living

---

[6] Doc. no. 14 (Memorandum in Support of Defendant's Motion for Summary Judgment) ¶ 1; doc. no. 16 (Memorandum in Support of Plaintiffs' Motion for Summary Judgment) ¶ 1.

[7] Memorandum in Support of Defendant's Motion for Summary Judgment ¶ 1; Memorandum in Support of Plaintiffs' Motion for Summary Judgment ¶ 1; doc. no. 22 (Defendant's Response to Plaintiffs' Motion for Summary Judgment), at 1.

[8] Memorandum in Support of Defendant's Motion for Summary Judgment ¶ 1; Memorandum in Support of Plaintiffs' Motion for Summary Judgment ¶ 2; Defendant's Response to Plaintiffs' Motion for Summary Judgment, at 1.

[9] Doc. no. 15-1, Attachment 1 (Agreement), at 17; *see also* Memorandum in Support of Defendant's Motion for Summary Judgment ¶ 2; Memorandum in Support of Plaintiffs' Motion for Summary Judgment ¶ 3; Defendant's Response to Plaintiffs' Motion for Summary Judgment ¶ 3. *Nota bene:*  all citations herein to the page numbers of exhibits supplied by the parties are to the page number assigned by the court's CM/ECF electronic filing system.

provision; a health care insurance premiums provision; and, a grievance procedure.

### 1.    Cost-of-Living provision

The cost-of-living provision contains a formula by which a "cost-of-living adjustment" is determined quarterly based on changes in the Consumer Price Index.[10] The adjustment is then applied to reduce the weekly health care premiums provided in the agreement.  Specifically, the relevant parts of the provision provide:

> Section 2.   Cost of Living Adjustment:   Effective on each adjustment date, a cost-of-living adjustment will be made to the current cost of living allowance.  The cost of living allowance will be equal to 1¢ per hour for each full 0.3 of a point change in the Consumer Price Index calculation.  . . .

> Section 3.  Effective on each adjustment date, the cost-of-living allowance as determined above shall be applied exclusively to help offset health insurance costs for hourly-rated employees.  The cost-of-living adjustments under the paragraph shall not be applied to employees' hourly wage rates.

### 2.    Health care premiums

The agreement provides the amount of the weekly health care insurance premiums in effect for each year of the five-year contract as follows:[11]

| Flat Rate Per Premium | |
|---|---|
| 1st year | $20.00 |

---

[10] *See* Agreement, at 18-19.

[11] *Id.* at 20.

| 2nd year | $25.00 |
|----------|--------|
| 3rd year | $30.00 |
| 4th year | $35.00 |
| 5th year | $45.00 |

This provision and the previous one are related.  For example, in the first year of the contract, production employees would be required to pay a weekly health care premium in the amount of $20.00 *minus* the amount of the cost-of-living adjustment provided by the cost-of-living provision.

**3.      Grievance procedure**

The grievance procedure in the parties' collective bargaining agreement reads as follows:

> All grievances concerning the interpretation or application of this Agreement shall be adjusted in the following manner.  A grievance must be presented within ten (10) working days of the occurrence out of which the grievance arose.  Grievances which are not presented within the specified time limit cannot be presented or considered at a later date.  In order to receive consideration, a grievance must specify the provision of this Agreement alleged to be breached and the specifics of the alleged infraction.  It is the intent of both parties that grievances shall be handled strictly within the time limits specified in each step of this grievance procedure.  However, time limits may be extended in any step of this grievance procedure by mutual written consent.

> **Section 1**  The procedure as outlined hereafter shall be followed:

> **Step 1**  An employee claiming a grievance shall, with their Union Steward, first discuss the grievance orally with the

employee's immediate supervisor.  The time, date, and specifics of this discussion shall be documented by both the steward and the supervisor.  The supervisor shall give a verbal answer within two (2) working days of the discussion.

**Step 2**  Failing a satisfactory adjustment at Step 1, within four (4) working days of the initial discussion per Step 1, the Union shall reduce the grievance to writing and the steward will present the grievance to the Superintendent, or their designee, who shall schedule a meeting to discuss the grievance at a time mutually agreeable.  Following this meeting the Superintendent, or their designee, shall give a written answer within four (4) working days of the meeting.

**Step 3**  If the Step 2 answer is unsatisfactory, the Union shall within twenty-one (21) days of the Step 2 answer, present the grievance to the Labor Relations Department.  The Labor Relations Manager shall provide a written answer within twenty-one (21) days from the time the grievance is referred to Step 3.

**Step 4**  If the Company's Step 3 answer is not acceptable, the Union shall, within twenty-one (21) days of the Company's Step 3 answer, refer the grievance to the Vice-President of Human Resources.  A Step 4 grievance meeting with an International Staff Representative of the United Steelworkers or their designee and the Vice-President of Human Resources or their designee shall be scheduled at a mutually agreeable time.  The Vice-President of Human Resources shall issue a written answer within thirty (30) days of the date the grievance is discussed at the Step 4 meeting.

**Section 2**  If the Company's Step 4 answer is unacceptable, the Union may within forty-five (45) days of the date of the Step 4 answer, move the grievance to binding arbitration by notifying the Company in writing of its wishes.  In such event, a panel of arbitrators shall be requested from the Federal Mediation and Conciliation Service.  Each party may reject one complete panel.  The arbitrator shall be selected from the panel by each party alternately striking an arbitrator.  Any

grievance submitted for arbitration that is not actually heard by an arbitrator within eighteen (18) months of the date the grievance was filed shall be deemed closed, unless, despite the Grievant's best efforts to ensure a timely hearing of the matter the chosen arbitrator is unable to hear the case due to reasons beyond the Grievant's control.

Normally, one grievance shall be heard by an arbitrator, but if the Union and the Company agree in writing, an arbitrator may be selected to hear multiple grievances in accordance with the terms of the parties' mutual agreement.

The arbitrator shall have no authority to change, amend, add to, or delete from the provisions of this Agreement. The decision of the arbitrator shall be final and binding upon all parties concerned. Each party shall bear its own expenses. The expenses of the arbitrator and the hearing shall be borne equally.

**Section 3**    The time limits in this Article may be extended by written mutual agreement between the parties. Should the Company fail to answer a grievance within the designated time limit[,] the grievance will automatically be advanced to the next step. By mutual agreement, specific grievances may be initially presented at Step 3 or Step 4.

**Section 4**    Any problems, complaints, or grievances of any employee arising under or concerning the Group Insurance Plans shall not be subject to or handled under the above grievance and arbitration procedure of this Agreement, but shall be handled by designated representatives of the Company and Union under the appeals procedure of the applicable Plan or the March 2, 1999 Health Care Appeal letter, as appropriate.[12]

## B.    The Parties' Dispute Over Cost-of-Living Adjustments[13]

---

[12] Agreement, at 15-16 (alteration supplied).

[13] It should be noted that there was an earlier dispute between the parties related to the cost-of-living provision, and that dispute also resulted in litigation before this court. Defendant interpreted the cost-of-living provision as applying on a weekly basis, whereas plaintiffs interpreted the provision as applying on an hourly basis. The parties submitted the grievance to an arbitrator,

The plaintiffs interpret the cost-of-living provision as providing that following each cost-of-living adjustment date, the adjustment reached on that date is *added to* the previous cost-of-living adjustment, resulting in a cumulative amount to be deducted from the flat rate health care premium specified for each year.[14]   For example, in 2008 the cost of living adjustment was $0.73.[15]   If the cost-of-living adjustment calculated on the next adjustment date was $0.50, plaintiffs contend that the health care premiums would be reduced by a cumulative $1.23 cost-of-living adjustment.

In contrast, defendant interprets the cost-of-living provision as resetting annually.   Based on that interpretation, at the beginning of 2009, defendant eliminated the $0.73 cost-of-living adjustment from the previous year and reset the cost-of-living adjustment to zero ($0.00).

---

and the arbitrator rendered a written decision adopting plaintiffs' position.  Defendant refused to comply with the arbitrator's decision.  Plaintiff then initiated suit in this court asserting a breach of contract claim against defendant.  This court entered summary judgment in favor of plaintiffs and ordered defendant to comply with the arbitrator's decision.  *See United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO-CLC, et al. v. Wise Alloys, LLC,* Civil Action No. 3:09-CV-678-CLS, doc. no. 37 (Memorandum Opinion and Final Judgment).

Defendant appealed that decision to the Eleventh Circuit Court of Appeals, and a panel of the Eleventh Circuit affirmed the judgment for plaintiff.  *See United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO-CLC, et al. v. Wise Alloys, LLC,* 642 F.3d 1344 (11th Cir. 2011).

[14] *See* doc. no. 16-3 (Declaration of Ken Hunt) ¶ 9.

[15] Doc. no. 14 (Memorandum in Support of Defendant's Motion for Summary Judgment) ¶ 14; doc. no. 16 (Memorandum in Support of Plaintiffs' Motion for Summary Judgment) ¶ 10; doc. no. 15-1 (Declaration of Sandra Scarborough) ¶ 8.

At the end of the first year of the agreement, November 1, 2008, the cost-of-living adjustment was $0.73.[16]  That adjustment was applied to reduce the $20 weekly health care premium in effect during the first year of the contract.

On December 19, 2008, David Duford, defendant's Labor Relations Manager, sent a letter to Ernest Kilpatrick, the President of the USW Local 200 at that time, stating that defendant was increasing the weekly health care premium to $25 for the second year of the contract.[17]  The letter also stated that, while that increase became effective on the first day of the second year of the contract, defendant had failed to implement the change on that date due to a clerical oversight and, therefore, the increased premium would be applied retroactively to November 5, 2008.[18]

The paychecks that production employees received the week of January 15, 2009, reflected a deduction for the increased $25 weekly health care premium, and an additional deduction due to the retroactive application of the increased health care premium.[19]  Additionally, no cost-of-living adjustment was applied to the weekly

---

[16] Memorandum in Support of Defendant's Motion for Summary Judgment ¶ 14; Memorandum in Support of Plaintiffs' Motion for Summary Judgment ¶ 10; Declaration of Sandra Scarborough ¶ 8.

[17] Doc. no. 15-1, Attachment 3 (December 19, 2008 Letter from David Duford to Ernest Kilpatrick); Declaration of Sandra Scarborough ¶ 3.

[18] December 19, 2008 Letter from David Duford to Ernest Kilpatrick; *see also* Declaration of Sandra Scarborough ¶ 11.

[19] Memorandum in Support of Defendant's Motion for Summary Judgment ¶ 16; doc. no. 23 (Plaintiffs' Response to Defendant's Motion for Summary Judgment) ¶ 16; Declaration of Sandra Scarborough ¶ 12.

health care premium deduction that week, and the full $25 weekly health care premium was deducted from employees' paychecks.[20]

Duford sent another letter to Kilpatrick on February 23, 2009, stating that no cost-of-living adjustment would be applied to the weekly health care premiums at that time because the Consumer Price Index did not require a quarterly adjustment. The letter reads as follows:

> The applicable Consumer Price Index (CPI) numbers have been published.  The CPI numbers have been reviewed for the contractually designated cost of living adjustment date of March 2, 2009 per the COLA Agreement in our Collective Bargaining Agreement.
>
> As a result of the CPI numbers review, no adjustment to the current cost of living allowance is required for the contractually designated date of March 2, 2009.  Per the provisions of our Labor Agreement, any adjustment will be applied to offset health insurance costs.  Due to the fact that there was no quarterly adjustment necessary, the weekly health care premium will remain $25.00 for all applicable employees.[21]

Plaintiffs disputed defendant's interpretation of the contract, and Kilpatrick, and officials from other unions representing other employees at the plant, sent a grievance letter to Duford on March 2, 2009.[22]  That letter reads, in relevant part, as

---

[20] Memorandum in Support of Defendant's Motion for Summary Judgment ¶ 16; Plaintiffs' Response to Defendant's Motion for Summary Judgment ¶ 16.

[21] Doc. no. 16-7 (February 23, 2009 Letter from David Duford to Ernest Kilpatrick).

[22] *See* doc. no. 16-7 (Correspondence Between the Parties), at 3; Memorandum in Support of Plaintiffs' Motion for Summary Judgment ¶ 13; doc. no. 22 (Defendant's Response to Plaintiffs' Motion for Summary Judgment), at 2-3.

follows:

> In your letter dated February 23, 2009 you convey that there was no increase in the COLA adjustment for March 2, 2009.
>
> I agree that as a result of the CPI numbers that there was no increase, however, I strongly disagree that the weekly health care premium should be $25.00.
>
> Our Current [*sic*] labor agreement says that the cost of living allowance will be equal to $.01 cent per hour for each 0.3 of a point change in the Consumer Price Index Calculation, and this pertains to the life of the contract and it does not start a new [*sic*] at the beginning of another year.
>
> The total cost of living for the 5 year contract is $.73 cents per hour and should be reflected as $29.20 per week, on a 40 hour week, thus Wise owes all hourly employees covered under their policy $4.20 per week for the full year of 2009.
>
> If the COLA does not increase during 2009 or 2010 then the employee will pay $.80 per week for 2010 because the premium increases to $30.00 per week.[23]

Duford responded to Kilpatrick and the officials from the other unions on March 5, 2009, stating that defendant did "not agree with your interpretation of the [cost-of-living provision] in our current Labor Agreement."[24]   That letter also asserted:

> I notified you by letter dated December 19, 2008, that the health

---

[23] Correspondence Between the Parties, at 3.

[24] Doc. no. 15-1, Attachment 5 (March 5, 2009 Letter from David Duford to Ernest Kilpatrick).

care premium would increase to $25/week, retroactive to November 1, 2008, in accordance with the respective Labor Agreements. We began deducting the $25/week premium with the first payroll in January 2009, as I stated we would do in my December 19th letter. No timely objections or grievances were filed.[25]

The Local then submitted a formal grievance to defendant.[26] The grievance is dated September 5, 2009, but is stamped as having been received by Duford on October 5, 2009.[27]

Duford sent Ken Hunt, the new President of the Local,[28] a letter denying the grievance on October 20, 2009, and that letter reads, in part, as follows:

> On December 19, 2008, the Company provided you with written notice that the weekly employee premium would be increased from $20 to $25. You were further notified that the premium increase would be retroactive to the contract anniversary date, which was November 5, 2008. The increased premiums were first deducted from the employees' weekly payroll check beginning January 15, 2008.[29] Neither at the time of these events, nor within the time period specified in our Labor Agreement in which a grieving party may bring a claim did the Union nor did any of its members file any timely objections or grievances regarding any of these occurrences, which were widely known and implemented. . . .

---

[25] *Id.*

[26] *See* Correspondence Between the Parties, at 5; Memorandum in Support of Plaintiffs' Motion for Summary Judgment ¶ 14; Defendant's Response to Plaintiffs' Motion for Summary Judgment, at 3.

[27] *See* Correspondence Between the Parties, at 5; Declaration of Sandra Scarborough ¶ 16.

[28] *See* doc. no. 16-3 (Declaration of Ken Hunt) ¶ 2.

[29] The date contained in the letter is a misstatement. Defendant began to deduct the increased premiums from employees' paychecks in January 2009. *See* Declaration of Sandra Scarborough ¶ 17.

The grievance is rejected as untimely and therefore all claims and demands are waived in its entirety by the Union.[30]

Hunt then escalated the grievance to "Step 4"of the grievance process by sending the grievance to Sandra Scarborough, defendant's Senior Vice President of Corporate Human Resources, on October 26, 2009, and neither Scarborough nor any other member of defendant's management responded.[31]

Hunt mailed defendant a notice of the Local's desire to submit the grievance to arbitration on February 12, 2010.[32]  Duford responded to Hunt by a letter dated July 28, 2010, stating that defendant refused to arbitrate:

> As you know, for the reasons stated in my letter dated October 20, 2009 (copy attached), the Company's position has been that the Union's grievance on this issue is untimely under the terms of our Labor Agreement . . . .  There is no ambiguity that untimely grievances are not arbitrable under our Labor Agreement, and we clearly advised the Union of our position in that regard on October 20, 2009.  Separate and apart from that, the Union failed to comply with Article XVI, Section 2, by failing to timely move the grievance to arbitration. . . .
>
> As a consequence, *Wise Alloys will not agree to submit the above-referenced issue to arbitration* because it conflicts with the terms of our Labor Agreement concerning issues subject to grievance and arbitration.[33]

---

[30] *See* Correspondence Between the Parties, at 6; Plaintiffs' Motion for Summary Judgment ¶ 15; Defendant's Response to Plaintiffs' Motion for Summary Judgment, at 3.

[31] *See* Correspondence Between the Parties, at 7; doc. no. 16 (Memorandum in Support of Plaintiffs' Motion for Summary Judgment) ¶ 16-17; Defendant's Response to Plaintiffs' Motion for Summary Judgment, at 3; doc. no. 15-1 (Declaration of Sandra Scarborough) ¶ 2.

[32] *See* Correspondence Between the Parties, at 8.

[33] *Id.* at 13 (emphasis supplied).

Plaintiffs filed this action to compel defendant to arbitrate on October 19, 2010.[34]

### III.  DISCUSSION

The nub of the parties' dispute is the question of whether plaintiffs' grievance is subject to arbitration.  Plaintiffs argue that the undisputed material facts establish that the grievance is subject to arbitration.  Defendant argues that plaintiffs' claim to compel arbitration is barred by the applicable statute of limitations; but that, even if the claim meets the statute of limitations, the grievance is not subject to arbitration because the grievance was not timely presented under the grievance procedure specified in the parties' collective bargaining agreement.

### A.    Statute of Limitations

Plaintiffs brought their claim to compel arbitration pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[35]  "Under Alabama law the statute of limitations for a straightforward § 301 suit to compel arbitration is six months."  *Aluminum Brick and Glass Workers International Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1548 (11th Cir. 1993) (citing *International Association*

---

[34] Doc. no. 1 (Complaint).

[35] *See id.* at 1 ("The Court has jurisdiction under 29 U.S.C. § 185 (Section 301 of the Labor Management Relations Act) and 28 U.S.C. § 1331 (Federal Question)"), and at 6 ("Count I (Section 301 Breach of Contract).").

*of Machinists and Aerospace Workers v. Allied Products Corp.*, 786 F.2d 1561, 1564 (11th Cir. 1986)).  "The time period to bring an action begins to run when one party *unequivocally refuses* to arbitrate the dispute."  *Id.* (emphasis supplied).

Plaintiffs initiated this action on October 19, 2010 and, thus, for the action to have been timely filed, the six-month statute of limitations period must not have begun earlier than April 19, 2010.[36]   Defendant argues that it unequivocally communicated its refusal to arbitrate on October 20, 2009, when David Duford sent Ken Hunt a letter stating:  "The grievance is rejected as untimely and therefore all claims and demands are waived in its entirety by the Union."[37]  Plaintiffs argue that defendant did not unequivocally refuse to arbitrate until July 28, 2010, when Duford sent Hunt a letter stating that defendant "will not agree to submit the above-referenced issue to arbitration . . . ."[38]

The Eleventh Circuit has only applied the "unequivocal refusal to arbitrate" standard in one case:  *Aluminum Brick and Glass Workers International Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545 (11th Cir. 1993).  There, the plaintiff union lodged a grievance with the defendant employer over the termination of an

---

[36] *See* Complaint.

[37] Doc. no. 16-7 (Correspondence Between the Parties), at 6.

[38] *Id.* at 13; *see also* doc. no. 16 (Memorandum in Support of Plaintiffs' Motion for Summary Judgment), at 19.

employee, and the grievance culminated in an arbitrator ordering defendant to reinstate the employee with backpay. *Id.* at 1546. The employee, without informing the union, then provided a calculation of the amount of backpay he believed he was owed, and the defendant provided the employee with a check. *Id.* at 1546-47. The check stated that by signing it the employee "acknowledges receipt of this check as settlement of discharge arbitration," and the employee signed the check. *Id.* at 1547. The union then determined that the employee was owed a larger amount of backpay and filed a grievance with the defendant. *Id.* Counsel for the defendant responded to the grievance with a letter stating that the dispute had been settled and that, "in light of these disclosures I'm sure you will agree that the matter is closed and it would be inappropriate to reopen it at this time." *Id.* After the exchange of further communication between the parties, the union filed suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to compel arbitration. *AAA Plumbing,* 991 F.2d at 1547. The defendant moved for summary judgment, in part on the grounds that the union's claim was barred by the applicable statute of limitations, and the district court granted summary judgment in favor of the defendant on other grounds. *Id.*

On appeal, the Eleventh Circuit considered the statute of limitations issue, and held that the plaintiff's claim was not barred. *Id.* at 1549. The defendant contended

18

that the letter from its counsel stating "in light of these disclosures I'm sure you will agree that the matter is closed and it would be inappropriate to reopen it at this time" was an unequivocal refusal to arbitrate the grievance. *Id.* at 1548. The Eleventh Circuit held that "[u]se of the phrase 'I'm sure you will agree' indicates that the letter was not an unequivocal refusal to arbitrate, but rather an attempt to persuade [the union's] counsel that he had no basis for the suggestion that the parties should return to arbitration." *Id.* (alteration supplied). Additionally, the court found that a later letter from the defendant to the plaintiff, and stating that the defendant "would be interested to see" what the plaintiff's position was on the grievance, indicated that "neither party had locked itself into one position." *Id.*

While the Eleventh Circuit holding in *AAA Plumbing* implies that specific wording is not required in order to establish an "unequivocal refusal to arbitrate," decisions from other circuits more clearly establish that "there is no need for a party refusing to arbitrate to use that term (or any other talismanic words) to express its refusal to arbitrate." *Independent Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Company United, Inc.*, 114 F. App'x 137, 141 (5th Cir. 2004); *see also, e.g.*, *United Steel, Paper and Forestry, Rubber, Manufacturing Energy, Allied Industrial and Service Workers' International Union v. ConocoPhilips Co.*, 748 F. Supp. 2d. 1315, 1323 (N.D. Okla. 2010); *Diamond D Construction Corp.*

*v. International Union of Operating Engineers*, 15 F. Supp. 2d 274, 289 (W.D.N.Y. 1998).  Instead, "[w]hether the employer has unequivocally refused to arbitrate turns on the particular facts of each case."  *Coca-Cola Bottling*, 114 F. App'x at 140.

Defendant relies on the decisions of the Fifth Circuit in *Independent Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Company United, Inc.*, 114 F. App'x 137 (5th Cir. 2004), and the Northern District of Oklahoma in *United Steel, Paper and Forestry, Rubber, Manufacturing Energy, Allied Industrial and Service Workers' International Union v. ConocoPhilips Co.*, 748 F. Supp. 2d. 1315, 1323 (N.D. Okla. 2010), for the position that "a company's denial of a union grievance on timeliness grounds constitutes an unequivocal refusal to arbitrate."[39]  In *Coca-Cola Bottling*, the defendant employer sent the plaintiff union a letter stating that the plaintiff did not "have a viable cause of action."  *Coca-Cola Bottling*, 114 F. App'x at 139.  The Fifth Circuit held that "when one party tells another that it has no viable cause of action because any claims that it might have are now time-barred, that party has unequivocally refused to arbitrate."  *Id.*  This action is materially different from *Coca-Cola Bottling*, because there the defendant stated that the plaintiff's legal claim was barred by the applicable statute of limitations, whereas here defendant stated that plaintiffs' grievance was not timely under the

---

[39] Doc. no. 14 (Memorandum in Support of Defendant's Motion for Summary Judgment), at 16.

20

agreement.

In *United Steel, Paper and Forestry, Rubber, Manufacturing Energy, Allied Industrial and Service Workers' International Union v. ConocoPhilips Co.*, the Northern District of Oklahoma extended the *Coca-Cola Bottling* reasoning to hold that the defendant's statement denying a grievance as "untimely" was an unequivocal refusal to arbitrate. *See ConocoPhilips*, 748 F. Supp. 2d. at 1323. The court relied on the *Coca-Cola Bottling* decision and the fact that under the parties' agreement, a failure to timely file a grievance rendered the grievance "not arbitrable." *Id.* at 1327.

The court declines to follow the reasoning of the *ConocoPhilips Co.* decision for the following reason. Duford's October 20, 2009 statement that "[t]he grievance is rejected as untimely and therefore all claims and demands are waived in its entirety by the Union" is best construed as a statement expressing defendant's position in response to plaintiffs' grievance—*i.e.*, defendant's reason for denying the grievance. It does not indicate — either expressly or impliedly — that defendant would not agree to arbitration.

Moreover, as plaintiffs assert, and as discussed in detail in the following section, the timeliness of a grievance under the agreement is a decision to be made by an arbitrator. For that reason, defendant's statement could be reasonably construed as indicating that defendant would assert before the arbitrator that

plaintiffs' grievance should be denied because it was not timely filed, rather than asserting that defendant refused to engage in arbitration. Thus, the statement was not an unequivocal refusal to arbitrate.

Having found that defendant did not unequivocally refuse to arbitrate on October 20, 2009, the issue then becomes on what date did defendant do so, if it ever did so.

Reviewing the evidence of record, this court concludes that defendant did not unequivocally refuse to arbitrate until July 28, 2010, when David Duford wrote to Ken Hunt, stating that defendant "will not agree to submit the above-referenced issue to arbitration."[40]   Less than three months elapsed between that date and the commencement of this action on October 19, 2010.  Thus, plaintiffs timely filed suit within the six-month statute of limitations.

## B.    Arbitrability

Defendant alternatively argues that the grievance is not arbitrable because it was untimely under the grievance procedure in the agreement.  Plaintiffs contend that the timeliness of the grievance is a decision to be made by an arbitrator.

In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), the Supreme Court held that question of "whether . . . the company was bound to arbitrate, as well

---

[40] Doc. no. 16-7 (Correspondence Between the Parties), at 13.

as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Id.* at 547 (quoting *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1962)).   However, questions such as "whether [grievance] procedures have been followed or excused, or whether the unexecused failure to follow them avoids the duty to arbitrate," are issues that "should be left to the arbitrator," rather than decided by a court.   *Id.* at 557 (alteration supplied).   The Court reasoned that such issues "ordinarily cannot be answered without consideration of the merits of the dispute which is presented for arbitration," and that permitting such issues to be presented to a court would create "opportunities for deliberate delay and the possibility of well-intentioned but no less serious delay." *Id.* at 557-58.

In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Supreme Court reiterated the holding in *John Wiley*, stating that "'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* at 84 (quoting *John Wiley*, 376 U.S. at 557) (emphasis in original).   The Court held that the applicability of a time limit in an arbitration agreement which provided that a dispute was not eligible for arbitration unless submitted for arbitration within a specified period of time after the event giving rise to the dispute occurred was "a matter presumptively for the arbitrator, not the judge." *Id.* at 85.   In line with those decisions, the Eleventh Circuit has noted

that, "whether a party has made a timely demand for arbitration upon the other party should generally be decided by the arbitrator." *AAA Plumbing*, 991 F.2d at 1548 n.1 (citing *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 36 (2d Cir. 1987)).

In short, it is clear that the question of whether plaintiffs' grievance is barred as untimely under the grievance procedure of the parties' collective bargaining agreement is a matter for an arbitrator to decide, not this court.

Defendant argues that the recent Supreme Court decision in *Granite Rock v. International Brotherhood of Teamsters*, — U.S. —, 130 S. Ct. 2847 (2010), establishes that, where an agreement provides that untimely grievances are not arbitrable, the arbitrability of such grievances is a matter to be resolved by courts.[41] In *Granite Rock*, an employer and a union had a binding collective bargaining agreement that expired. *Id.* at —, 130 S. Ct. at 2853. The employer and the union began negotiating a new agreement, the negotiations stalled, and the union initiated a strike. *Id.* The parties entered into a new collective bargaining agreement, but that agreement did not address the liability of the union members for any strike-related damages incurred by the employer prior to the effective date of the parties' new agreement. *Id.* The parties then began to negotiate an agreement to hold the union

---

[41] *See* Memorandum in Support of Defendant's Motion for Summary Judgment, at 24-30.

members harmless, and those negotiations stalled. *Id.* The union instructed its members not to honor their agreement to return to work under the new agreement, and the members continued to strike. *Granite Rock*, — U.S. at —, 130 S. Ct. at 2854. The employer informed the union that it would consider any continued strike activity as a violation of the "no-strike" provision in the new collective bargaining agreement. *Id.* The employer subsequently initiated suit in federal court seeking an injunction against the strike and damages for breach of contract on the grounds that the dispute over a hold-harmless agreement was an arbitrable grievance under the new collective bargaining agreement. *Id.* The employees ended their strike after the employer filed suit. *Id.* The employer's breach of contract claim turned on whether the collective bargaining agreement was formed during or after the strike period. *Id.* The district court held that the determination of the date the agreement was ratified was an issue for a court to decide, rather than an arbitrator. *Granite Rock*, — U.S. at —, 130 S. Ct. at 2855. On appeal, the Ninth Circuit held that the dispute over the ratification date was an issue to be decided by an arbitrator. *Id.*

The Supreme Court characterized the issue as a "formation dispute," but noted that the parties conceded "both the formation and the validity of the . . . arbitration clause." *Id.* at —, 130 S. Ct. at 2856. Due to those "unusual facts," the Court took the opportunity to

reemphasize the proper framework for deciding when disputes are arbitrable under our precedents.  Under that framework, a court may order arbitration of a particular dispute when the court is satisfied that the parties agreed to arbitrate *that dispute*.  To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce.  Where there is no provision validly committing them to an arbitrator, these issues typically concern the scope of the arbitration clause and its enforceability.  In addition, these issues always include whether the clause was agreed to, and may include when that agreement was formed.

*Id.* (citations omitted, emphasis in original).  The court explained its earlier decisions as holding

that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforcement or applicability to the dispute is in issue.  Where a party contests either or both matters, "the court" must resolve the disagreement.

*Id.* at —, 130 S. Ct. at 2857-58 (citations omitted, emphasis in original).

The Court held that the issue of the date the agreement was formed was an issue to be decided by a court because that issue was an "arbitrability" issue: *i.e.*, the court was "required to decide the . . . ratification date in order to determine whether the parties consented to arbitrate the matters covered by the demand."  *Id.* at —, 130 S. Ct. at 2860.

In summary, the *Granite Rock* decision did not deviate from earlier precedent

distinguishing between issues of "arbitrability" as issues for courts to decide, and issues of the interpretation and application of contracts to specific disputes as issues for arbitrators to decide.  Thus, a court must resolve contractual issues related to arbitration agreements, *i.e.*, was a contract formed, and does the contract provide for the arbitration of a dispute?  Where a contract was formed and covers a dispute, all further issues related to that dispute are matters for an arbitrator to decide.

The parties do not dispute that the agreement is a valid contract between the parties, nor do they dispute that grievances related to the application of the cost-of-living provision are covered by the arbitration provision in the agreement.  The parties only dispute whether plaintiffs' grievance was brought within the time limitations of the grievance procedure in their agreement.  The grievance procedure specifically provides that "[a]ll grievances concerning the interpretation or application of this Agreement shall be adjusted in the following manner," and further provides that arbitration is the ultimate stage in the resolution of grievances.[42]  The parties' dispute is a dispute over the application of the time limitations in the grievance procedure contained within the contract, rather than a dispute over the arbitrability of the grievance.  Thus, under the terms of the grievance procedure and the *John Wiley*, *Howsam*, and *AAA Plumbing* decisions, the grievance must be

---

[42] Doc. no. 15-1, Attachment 1 (Agreement), at 15.

submitted to an arbitrator for resolution, including resolution of the timeliness of the grievance.

## IV. **CONCLUSION AND ORDER**

For the reasons set forth herein, plaintiffs' motion for summary judgment is due to be, and hereby is, GRANTED, and defendant's motion for summary judgment is due to be, and hereby is, DENIED. The parties are ORDERED to forthwith submit their dispute to an arbitrator in accordance with the binding arbitration agreement.

Further, the court is of the opinion that the case should be stayed, rather than dismissed, pending a final resolution following arbitration. Though there is case law in other circuits supporting the proposition that, under 9 U.S.C. § 3,[43] courts have the discretionary authority to dismiss cases when compelling arbitration, the Eleventh Circuit adheres to a more literal interpretation of the statute. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). *See also Musnick v. King*

---

[43] Section 3 reads as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis supplied).

*Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003); *Pitchford v. Amsouth Bank*, 285 F. Supp. 2d 1286, 1297 (M.D. Ala. 2003); *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279, 1288 (N.D. Ala. 2000); *Bradford v. KFC National Management Co.*, 5 F. Supp. 2d 1311, 1315 (M.D. Ala. 1998); *Nazon v. Shearson Lehman Brothers, Inc.*, 832 F. Supp. 1540, 1543 (S.D. Fla. 1993).  *Accord Lloyd v. Hovensa, LLC,* 369 F.3d 263, 268-271 (3d Cir. 2003).

In *Bender*, for example, the Eleventh Circuit concluded that district courts do not have the power to choose dismissal over a stay:

> The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them.  Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration.  9 U.S.C. § 3.  If the parties do not proceed to arbitration, the court may compel arbitration.  9 U.S.C. § 4.  Therefore, we vacate the dismissal of the state law claims and remand with instructions that judgment be entered staying all claims pending arbitration.

*Bender*, 971 F.2d at 699.  In *Lloyd*, the Third Circuit expressed a similar stance on the issue, basing its reasoning primarily on the clear statutory language, but also providing some practical justifications for entering a stay rather than an order of dismissal.  *See Lloyd*, 369 F.3d at 268-271.  The court noted that a stay "relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to

29

arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate." *Id.* at 270.

For the same reasons, it is ORDERED that this action is STAYED pending resolution through arbitration.

Even so, for administrative and statistical purposes, the Clerk is directed to close this file. *See, e.g.*, *Taylor v. Citibank USA, NA*, 292 F. Supp. 2d 1333, 1346 (M.D. Ala. 2003) (closing file administratively after entering stay but advising parties of their right to request reinstatement); *Pitchford,* 285 F. Supp. 2d at 1297 (same); *Nazon*, 832 F. Supp. at 1543 (same).  This action will have no effect on the court's retention of jurisdiction, and the file may be reopened, on either party's motion, for an appropriate purpose such as dismissal following settlement, entry of judgment, vacatur, or modification of an arbitrator's award.  *See* 9 U.S.C. § 9; *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 201-02 (2000).

The parties are directed to file a notice with the court upon settlement of the case, or the conclusion of arbitration, whichever first occurs.

**DONE** and **ORDERED** this 15th day of June, 2012.

_____
United States District Judge

30